
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

FREDERICK L. WILLIAMS,

                Plaintiff,

-vs-

PETER RUSSO AND TED THOMAS

                Defendants

DECISION & ORDER
01-CV-6401

---

## INTRODUCTION

This action, pursuant to 42 U.S.C. § 1983, in which Plaintiff contended that Defendants violated his rights as guaranteed by the Eighth Amendment to the U.S. Constitution, was tried before the Court without a jury on January 12, 2009, and January 14, 2009. Plaintiff and both Defendants, Corrections Officer Ted Thomas ("Thomas") and now retired Corrections Officer Peter Russo ("Russo"), testified at trial. The only other testimony was offered by Plaintiff's witness, Shawn Bolton, who testified via video conferencing from Clinton Correctional Facility. The Court, having considered the testimony of the witnesses and exhibits received into evidence, now, pursuant to Fed. R. Civ. Proc. 58 (c), makes its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On August 24,1998, Plaintiff was an inmate at the Wende Correctional Facility ("Wende"), residing in the Protective Custody Unit. The Protective Custody Unit was located on E Block at Wende. At about 3:45 p.m., at their request, Plaintiff and five other inmates were taken to the day room on E Block to eat evening meal. The day

room was about 15 ½ feet by 15 ½ feet with two windows and one door. There was a window in the door that measured 12 inches by 9 inches. Inside the day room was a television, which was bolted to the wall, and three tables, which were bolted to the floor, with three to four chairs bolted to each table. Outside the room was a narrow hallway with a desk. Thomas and Russo were on duty outside the door to the day room and responsible for the care, custody, and control of the inmates within the room. Prior to the inmates arriving, Thomas and Russo had placed the food in the day room, and after the inmates entered the day room, Thomas closed and locked the door. One of the inmates in the Protective Custody Unit who was eating in the day room with Plaintiff was David Garcia. Earlier that day, prior to evening meal in the day room, Plaintiff and Garcia had gotten into an argument over cigarettes.

     Once inside the day room, after the door was closed and locked, Garcia approached Plaintiff, who was at the time talking to inmates Shawn Bolton and Albert Lynch. Obscenities were exchanged between Plaintiff and Garcia, and then Garcia swung at plaintiff, and the two began fighting. Within seconds of the fight breaking out, Garcia pulled out a Plexiglass shank from his pocket and cut Plaintiff above his right eye, and then, again within seconds of the fight breaking out, Garcia stabbed Plaintiff in the neck. Nonetheless, Plaintiff was able to get Garcia to the ground and was able to hold him down until the fight was broken up by corrections staff. As a result of the altercation, Plaintiff sustained bleeding from cuts to his eye and neck, and he also sustained bruises and bumps to his knee. Prior to the fight occurring, neither Russo or Thomas was aware of any problems between Plaintiff and Garcia, or that Garcia posed any risk whatsoever to Plaintiff

When the fight between Plaintiff and Garcia commenced in the day room, both Russo and Thomas, who remained positioned outside the room, heard thumping coming from within the room. Upon hearing the thumping, Thomas, who was closer to the door to the day room than Russo, looked inside the room through the window in the door and observed Plaintiff and Garcia fighting. Other inmates in the day room, however, were standing in front of Thomas as he attempted to view what was occurring from his vantage point outside the room. Thomas did not see any weapon or any blood. After looking inside the day room, Thomas turned around to Russo and said there was a fight.

Russo, who based upon his experience as a corrections officer, instinctively concluded, when he heard the thumping sound, that a fight was occurring inside the day room, immediately summoned for help by yelling, "fight, fight, fight" into his radio transmitter. Russo also the "pulled the pin" on his personal alarm system, activating an automated call for assistance. He then ran to open the door that separates the second and third floors, so that responding officers could access the area where the break room was located. Russo then quickly returned to the break room where Thomas remained positioned outside yelling "stop it," or "break it up." Russo looked inside the room through the window in the door. Four inmates were standing directly in front of him on the other side of the door. Russo could not see Defendant or Garcia, and he did not observe any weapons or blood.

About one to two minutes after Russo called and signaled for help, approximately a dozen corrections officers, including the supervising sergeant for the area, arrived at the day room. The area sergeant directed that the door to the day room be

opened and corrections officers entered the room. Russo and Thomas were not among the officers who initially entered the room. The area sergeant directed Plaintiff and Garcia to stop fighting and both complied.

During the one to two minutes that it took responding officers to arrive at the day room from the time Russo called and signaled for help, after he and Thomas heard the thumping and Thomas had seen Plaintiff and Garcia fighting, neither Thomas nor Russo entered to the day room to attempt to stop the altercation. This was because both Russo and Thomas, based upon their training and experience, believed that it would have been unsafe to do so. There were six inmates and only two officers, Russo and Thomas, had on their persons keys to E Block. Had they entered, they would have placed their lives in danger, as well jeopardized the security of E Block. Russo and Thomas considered that the fight could have been staged, and, if they entered the day room, they could have then been overpowered by the six inmates inside the room. Moreover, there was no overriding reason to enter into the day room before help arrived, since neither Russo nor Thomas observed any weapon or bleeding.

## CONCLUSIONS OF LAW

> The Eighth Amendment proscribes the "'unnecessary and wanton infliction of pain'" on prisoners by prison officials. *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir.1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). It also imposes on prison officials "a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). A prisoner injured while in custody may recover for violation of his Eighth Amendment rights if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a "substantial risk of serious harm" or from the official's deliberate indifference to that risk. *Id.* at 834, 114 S.Ct. at 1977; *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).

*Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir. 1997). Moreover,

> Although "[a] correctional officer's presence at an attack of an inmate, where he does nothing to stop an assault, may be sufficient to establish a claim under Section 1983," *Dresdner v. Brockton* (citing *Morales v. New York State Department of Corrections*, 842 F.2d 27 (2d Cir. 1988)), an isolated omission to act by a state prison guard must be accompanied by evil intent, recklessness, or at least deliberate indifference to the consequences of the conduct. *Bass v. Jackson*, 790 F.2d 260, 262-63 (2d Cir. 1986) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir.1985); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)). **The defendant must also be shown to have had "an extended opportunity to stop the attack but failed to take any action to do so."** *Rucco v. Howard*, 1993 WL 299296 (S.D.N.Y. Aug. 4, 1993) (citing *Williams*, 508 F.2d at 546).

*Desulma v. City of New York*, No. 98 Civ. 2078 (RMB) (RLE), 2001 WL 798002, 7 (S.D.N.Y. Jul. 6, 2001) (emphasis added) adopted by district court, Docket No. 59 (Dec. 11, 2001).

Further,

> A correctional officer's failure to intervene when an inmate is attacked can constitute a violation of the inmate's rights under the Eighth and Fourteenth Amendments. *See Davidson v. Cannon*, 474 U .S. 344, 348 (1986). To establish a violation under either provision requires proof of deliberate indifference. *See Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir.1974). **An officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate with no risk to himself, yet fails to act.** *Stubbs v. Dudley*, 849 F.2d 83, 86-87 (2d Cir.1988).

*Tucker v. Hayes*, No. 04-CV-1555 (RNC), 2007 WL 4326014, 2 (D.Conn. Dec. 10, 2007), emphasis added.

As to deliberate indifference, the Southern District observed:

Plaintiff also must show that prison officials acted with "a sufficiently culpable state of mind," specifically "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (cita-

>tions omitted) (citing *Farmer*, 511 U.S. at 836-37, 839-40); *see also Hayes*, 84 F.3d at 620 (2d Cir. 1996) ("[T]o state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."). A prison official will be found to have acted with deliberate indifference if (1) he "knows that inmates face a substantial risk of serious harm"; and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

*Warren v. Goord*, 579 F. Supp. 2d 488, 494-95 (S.D.N.Y. 2008).

Finally, to prevail on an Eighth Amendment claim for a corrections officer's failure to intervene and stop an inmate on inmate attack, a plaintiff, seeking recovery, must establish that he suffered more than a *de minimus* physical injury. *Mitchell v. Horn,* 318 F.3d 523, 534-36 (3d Cir. 2003)

Here, it is undisputed that Russo and Thomas were not aware of, or deliberately indifferent to, any risk that Garcia posed to Plaintiff. Rather, Plaintiff proceeded on a theory that Russo and Thomas were liable because they failed to intervene to stop Garcia from continuing to assault Plaintiff, and that, had they done so, Plaintiff would not have sustained an injury that was objectively serious. Based upon the principles of law set forth above, in order then to prevail, Plaintiff would have to establish by a preponderance of evidence each of the following four elements:

>First, that Russo and/or Thomas observed or had reason to know that Plaintiff was Involved in a physical altercation with another inmate;
>
>Second, that Russo and/or Thomas had a reasonable opportunity to intervene to prevent the attack from continuing. A reasonable opportunity to intervene means that the attack must have been of sufficient duration that an officer present at the scene would have had a reasonable opportunity to attempt to prevent the attack from continuing. However, in circumstances where a corrections officer reasonably concludes that further intervention would threaten the health and safety of all concerned, includ-

>   ing correctional staff, his failure to intervene is not a constitutional violation;
>
>   Third, that in failing to intervene, Russo and/or Thomas were deliberately indifferent to a substantial risk of harm to Plaintiff; and
>
>   Fourth, that Russo's and/or Thomas's deliberate indifference to a substantial risk of harm was a risk that caused Plaintiff some harm. In order to show sufficient harm to constitute a constitutional violation, Plaintiff need not prove that he suffered a serious physical injury, but only that he suffered some injury beyond a most minor one.

As to the first element, the Court concludes, based upon its Findings of Fact, that Plaintiff has proven that Defendants observed or had reason to know that Plaintiff was involved in a physical altercation with another inmate.

However, as to the second element, the Court concludes that Plaintiff has not proven by a preponderance of the evidence that Defendants had a reasonable opportunity to intervene. In that regard, had Defendants attempted to act in the one to two minutes that it took for a sufficient number of other officers to respond, they would have placed their own lives in danger, as well as jeopardizing the security of E Block.

As to the third element, even assuming *arguendo* that Plainttiff had established the first two requirements, he has failed to prove that Defendants were even negligent in failing to respond, let alone deliberately indifferent. Thomas yelled to Plaintiff and Garcia to stop fighting as he waited two minutes or less for the responding corrections officers to arrive. Further, neither he nor Russo observed any weapon or bleeding or anything that would lead them to believe that Plaintiff or Garcia were in any type of imminent life-threatening situation.

Finally, even assuming *arguendo* that Plaintiff had proven the first three elements, he has failed to establish that Plaintiff suffered a physical injury as a result of

Russo's and/or Thomas' failure to intervene. While Plaintiff sustained a cut to his eye and a wound to his neck, these occurred within seconds of the fight starting and, consequently, he failed to prove that these injuries were caused by Defendants' deliberate indifference to a substantial risk that he would suffer serious harm. Plaintiff also sustained bruises and a bump to his knee. While these might well be more than *de minimus* injuries, Plaintiff did not establish at what point in the altercation they occurred and, therefore, failed to prove that intervention by Russo and/or Thomas would have prevented them.

### CONCLUSION

Accordingly, it is the decision of the Court, that judgment be entered in favor of each of the Defendants.

IT IS SO ORDERED.

Dated: January 23, 2009
       Rochester, New York
                            ENTER:


                                         /s/ Charles J. Siragusa
                                         CHARLES J. SIRAGUSA
                                         United States District Judge